UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DETRINA SOLOMON,
*on behalf of herself and all others similarly situated*,

                              Plaintiff,

            -against-

FLIPPS MEDIA, INC., *dba* FITE and FITE TV,

                             Defendant.
-----------------------------------------------------------X

For Online Publication Only

**MEMORANDUM & ORDER**
22-cv-5508 (JMA) (JMW)

**AZRACK, United States District Judge:**

Plaintiff Detrina Solomon filed this putative class action against Defendant Flipps Media, Inc., alleging that Defendant has violated the Video Privacy Protection Act, 18 U.S.C. § 2710 (the "VPPA").  Plaintiff's claims are premised on Defendant's installation and use of a tracking product on its website and apps called the "Pixel."  The Pixel code was developed by and promoted by Facebook, Inc. ("Facebook").  (Compl. ¶ 43.)

The instant suit is one of numerous putative class action suits filed across the country alleging that companies that provide streaming video on the internet have violated the VPPA by installing and using the Pixel.

Presently pending before the Court is Defendant's motion to dismiss.  For the reasons stated below, Defendant's motion is granted.

## I. BACKGROUND

Defendant is a digital streaming company that sells monthly and annual subscriptions to three on-demand video channels, FITE+, TrillerVerzPass, and NWA All Access, which provide streaming video content.  (Id. ¶¶ 24, 26.)  Defendant "also offers for purchase various stand-alone pay-per-view events, some of which also are included in its subscription channels."  (Id. ¶ 9.)

1

A subscription to TrillerVerzPass provides access, through Defendant's website and "app," to various boxing, combat, and music events. (Id. ¶ 26.) These events include "hip-hop battles" as well as shows "featuring sporting matches combined with live musical performances." (Id. ¶ 37; see also id. ¶ 26.) TrillerVerzPass and Defendants' other channels provide both "live and on-demand video content." (Id. ¶ 2.)

Plaintiff had a paid subscription to TrillerVerzPass during the past two years. (Id. ¶ 9.) Plaintiff has had a Facebook account since 2009.

Each Facebook has a unique Facebook ID ("FID"), which is a unique sequence of numbers linked to an individual's Facebook profile." (Id. ¶¶ 6–7.) "Entering 'facebook.com/[FID]' into any web browser returns the Facebook profile of the specific individual." (Id. ¶ 7; see id. ¶ 62.)

Plaintiff alleges that the Pixel installed by Defendant on its site sends certain information to Facebook, which she contends violates the VPPA. Specifically, Plaintiff alleges the Pixel Defendant installed sends to Facebook: (1) a subscriber's unique Facebook ID ("FID"); and (2) the titles and URLs for specific videos that the subscriber accessed on Defendant's website. (Id. ¶¶ 57–73.) Plaintiff maintains that the disclosure of this information violates the VPPA.

## II. DISCUSSION

### A. Motion to Dismiss Standard

To survive a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Although a court must accept all factual allegations in the

complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555. Ultimately, if the plaintiff's allegations "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570.

**B. The VPPA**

Congress passed the VPPA in 1988 after a newspaper obtained and published a list of then-Supreme Court nominee Robert Bork's video rental history from a video store. Wilson v. Triller, Inc., 598 F. Supp. 3d 82, 90 (S.D.N.Y. 2022). In response to this incident, Congress enacted the VPPA, "with the goal, according to the Senate Report, of "preserv[ing] personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." Id. (quoting Sen. Rep. No. 100-599, at 1).

"[T]o plead a plausible claim under section 2710(b)(1) [of the VPPA], a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." Walker v. Meta Platforms, Inc., No. 22-CV-02442, 2023 WL 3607282, at *4 (N.D. Cal. Mar. 3, 2023) (quoting Mollett v. Netflix, Inc., 795 F.3d 1062, 1066 (9th Cir. 2015)).

Plaintiff alleges that Defendant violated the VPPA because the Pixel it installed and used sends to Facebook certain information including: (1) a subscriber's FID; and (2) the titles and URLs for specific videos that the subscriber accessed on Defendant's website. (Id. ¶¶ 57–73.)

In its motion to dismiss, Defendant argues, inter alia, that Plaintiff has not alleged a plausible VPPA claim because: (1) she has not identified what, if any, personal information, is contained on her public Facebook profile page; and (2) only "prerecorded" content is covered by

the VPPA and Plaintiff has not alleged she accessed any "prerecorded", as opposed to "live," videos.

In the past year, courts across the country have decided motions to dismiss raising similar arguments about companies' use of the Pixel and other technologies that can disclose information about a user to third parties. Since the parties have filed the motion papers in this case, they have each filed letters addressing recent decisions in this area.

C. Analysis

### 1. Plaintiff Has Not Plausibly Alleged that Defendant Disclosed "Personally Identifiable Information"

To pursue a VPPA claim, Plaintiff must plausibly allege that Defendant "knowingly disclose[d], to any person, [her] personally identifiable information." 18 U.S.C. § 2710(b). Under the VPPA, the term "personally identifiable information" ("PII") "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." Id. § 2710(a)(3).

While the Second Circuit has not further defined PII, other Courts of Appeals have adopted different standards for determining what constitutes PII. See Wilson v. Triller, Inc., 598 F. Supp. 3d 82, 90–91 (S.D.N.Y. 2022). The Court finds persuasive the standard that has been adopted by the Third and Ninth Circuits—namely, that the "prohibition on the disclosure of personally identifiable information applies only to the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." In re Nickelodeon Consumer Priv. Litig., 827 F.3d 262, 267 (3d Cir. 2016); see also Eichenberger v. ESPN, Inc., 876 F.3d 979, 985 (9th Cir. 2017).

Plaintiff alleges—and Defendant does not dispute—that knowledge of Plaintiff's FID would allow an ordinary person to access Plaintiff's Facebook public profile page. Defendant,

4

however, argues that the fact that mere fact that Plaintiff's FID was disclosed along with the video titles she accessed is, standing alone, insufficient because Plaintiff has not identified any personal information that can be seen on her public Facebook profile. Under Defendant's logic, absent this additional information, it cannot be said that the FID would identify Plaintiff as the person who accessed the videos at issue.

The complaint does not say anything about the information or photos found on Plaintiff's public Facebook profile page. Instead, the complaint merely alleges that an "FID allows any ordinary person to quickly and easily use an unencrypted FID to locate, access, and view a particular user's Facebook profile, and all of the detailed and personal information contained in it." (Compl. ¶ 7.) The complaint includes an exemplar screenshot of Mark Zuckerberg's Facebook page, which includes his name, photographs of him, and other personal information. (Id. ¶ 63.) Plaintiff maintains that it is not necessary for her to allege anything further in order to state a plausible claim that her PII was disclosed.

Under the "ordinary person" standard articulated by the Third and Ninth Circuits, district courts have reached different conclusions on the question of whether an FID (along with the names of the videos that were accessed), standing alone, constitutes PII or whether a plaintiff must allege more to state a plausible VPPA claim. Compare Ghanaat v. Numerade Labs, Inc., No. 23-CV-00833, 2023 WL 5738391, at *4 (N.D. Cal. Aug. 28, 2023) with Golden v. NBCUniversal Media, LLC, No. 22-CV-9858, 2023 WL 5434378, at *6 (S.D.N.Y. Aug. 23, 2023) (collecting cases and concluding that an FID constitutes PII). In Ghanaat, the court explained that:

> [An] FID can constitute PII where it leads to a Facebook page that discloses personal and identifying information about the consumer.
>
> Here, plaintiffs' allegations are inadequate because they do not allege their Facebook pages contain any personal information, such as their names or email addresses. Accordingly, the complaint does not adequately allege that their FIDs

5

> result in the sharing of any personal information. Plaintiffs thus fail to allege this element of their claim or state an injury.

2023 WL 5738391, at *4; see also Wilson, 598 F. Supp. 3d at 92 (dismissing VPPA claim involving the social media app Triller because although the "complaint alleges what sort of information could be included on a user's profile and then ultimately disclosed to the third parties, it contains no allegation as to what information was actually included on [the plaintiff's] profile nor how that information could be used by a third party to identify [plaintiff]"); cf. Feldman v. Star Trib. Media Co. LLC, No. 22-CV-1731, 2023 WL 2388381, at *8–10 (D. Minn. Mar. 7, 2023) (denying motion to dismiss where complaint alleged that the plaintiff's "'Facebook profile and his email address contain his name,' making it feasible to identify [him] by reference to this information.").

The Court finds the reasoning in Ghanaat persuasive and adopts it here. Accordingly, Plaintiff needed to allege that her public Facebook profile page contained identifying information about her in order to state a plausible claim.[1] As her complaint says nothing about any personal information on her public Facebook profile page, her VPPA claim fails.

### 2. Plaintiff Has Failed to Plausibly Allege that She Accessed "Prerecorded" Videos

Under the VPPA, a defendant qualifies as a "video tape service provider" if the defendant is "engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4) (emphasis added). And, as noted above, under the VPPA, PII "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." Id. § 2710(a)(3).

---

[1] Ghanaat did not explicitly address whether a plaintiff's public Facebook profile page must have contained the requisite personal information at the time the allegedly unlawful disclosure was made. While such a showing would seem necessary, the Court does not need to decide that question here.

"[C]ourts have uniformly declined to interpret 'similar audio visual materials' as covering 'live' video content broadcast over the internet."  Walker v. Meta Platforms, Inc., No. 22-CV-02442, 2023 WL 3607282, at *5 (N.D. Cal. Mar. 3, 2023).  Therefore, VPPA claims only apply to "prerecorded" video content and do not cover "live" video content.  See id. at *4–8; see also Stark v. Patreon, Inc., 635 F. Supp. 3d 841, 851 (N.D. Cal. 2022); Louth v. NFL Enters. LLC, No. 21-CV-405, 2022 WL 4130866, at *4 (D.R.I. Sept. 12, 2022).  Thus, to state a viable VPPA claim, Plaintiff must plausibly allege that she accessed "prerecorded" video content and that Defendant disclosed identifying information about those prerecorded videos.

Defendant asserts that Plaintiff's claim fails because she has not plausibly alleged that she accessed any prerecorded video on Defendant's site.  Plaintiff does not dispute that the VPPA applies only to "prerecorded" video and is inapplicable to "live" video.  Instead, she contends that any purportedly "live" video streams on Defendant' service technically still qualify as "prerecorded" and, thus, are covered by the VPPA.  Plaintiff also maintains that the factual allegations in her complaint are sufficient to plausibly allege that she accessed other, indisputably, prerecorded video on Defendant's site.

The Court concludes that Plaintiff's complaint fails to plausibly allege that she accessed any "prerecorded" video on Defendant's site.

First, Plaintiff's brief asserts, in a footnote, that the video streams billed as "live" on Defendant's site are technically "prerecorded."  Plaintiff has waived this argument by advancing it only in a footnote.  This argument also fails on the merits.  Plaintiff's complaint alleges:

> Defendant provides pre-recorded content via its online streaming services, whether or not the content is billed as "live." For "live" streaming events, video of the event is first recorded as a video file (such as in a standard RAW file format). That video file is then delivered to an encoder to convert the video into a smaller, streamable file. The smaller, streamable video files are then transmitted via the Internet to

7

> individual devices for viewing, such that end users of Defendant's website always view pre-recorded content.

(Compl. ¶ 40.) This allegation is insufficient to plausibly allege that this "live" content actually qualifies as "prerecorded" for purposes of the VPPA. Notably, a similar argument was rejected in Walker, which explained:

> [Walker] contends that live streamed video content on Facebook Live counts as "prerecorded" and, therefore, falls within the scope of "similar audio visual materials." . . . Walker argues that "Meriam-Webster dictionary defines 'prerecorded' as something 'recorded in advance,'" and Facebook Live content fits that definition because the technical process that Meta employs to live stream video involves "taking data input from users, writing that data onto its physical servers, reading that data, and only then delivering that data to end users." . . . Walker contends that the fact that this technical process results in the transmission of video content on a near-contemporaneous basis relative to its production does not change the fact that the process involves the "recording" of the video data on Meta's servers and the "rebroadcasting" of the recorded video data to viewers via Facebook Live.
>
> The Court is not persuaded. Even under Walker's proposed definition of "prerecorded" (i.e., "recorded in advance"), live streamed video content would not qualify as prerecorded. Walker's allegations raise the inference that, during a Facebook Live broadcast, the video content is broken down into pieces, which are recorded onto Meta's servers and then transmitted to the viewer in a continuous stream that results in the viewer being able to view the video content at the same time or nearly at the same time as it is being generated. . . . "Recording" the video content on Meta's servers <u>in the course of</u> transmitting the content is not the same as "<u>prerecording</u>" the video content, <u>in advance</u> of its transmission. Further, it appears that at least some forms of broadcasting live television may employ a technical process for transmitting the video content that is analogous to the process that Meta allegedly employs for transmitting live video content via Facebook Live, yet Walker has cited no case in which a court has held that live television broadcasts count as "prerecorded" or are otherwise covered under the VPPA. Accordingly, the Court declines to interpret "prerecorded" and the VPPA in the manner that Walker proposes.

Walker, 2023 WL 3607282, at *7 (emphasis in original). Similarly, the Court concludes that here, Solomon has not plausibly alleged that the content that is advertised as "live" on Defendant's site actually qualifies as "pre-recorded" for purposes of the VPPA.

Plaintiff also insists that she has plausibly alleged that she accessed other indisputably "prerecorded" video on Defendant's site. Plaintiff, however, never explicitly alleges that she actually accessed such "prerecorded" video on Defendant's site. Instead, Plaintiff's brief pieces together a hodgepodge of various factual allegations that she asserts are sufficient to plausibly suggest that she accessed "prerecorded" video. (Pl. Mem. at 16.) The Court finds that these allegations are insufficient—particularly given the preference of many viewers to watch sporting events "live"—to plausibly allege that Plaintiff actually accessed any "prerecorded" video.[2]

### 3. Leave to Amend

In a footnote on the final page of her brief, Plaintiff asks for leave to amend in the event Defendant's motion is granted so that Plaintiff can "remedy any perceived deficiencies." (Pl. Mem. at 18.) The Court denies Plaintiff's request for leave to amend. See Gregory v. ProNAi Therapeutics Inc., 757 F. App'x 35, 39 (2d Cir. 2018) (affirming denial of leave to amend where, inter alia, "plaintiffs sought leave to amend in a footnote at the end of their opposition to defendants' motion to dismiss," but "they included no proposed amendments"). Plaintiff has had more than ample opportunity to address the deficiencies identified above, but has not identified any proposed amendments. Notably, prior to briefing the motion to dismiss, Defendant filed a pre-motion conference letter, which asserted that Plaintiff's complaint was deficient because: (1) it failed to identify what, if any personal information, her Facebook profile contained; and (2) live events are not covered by the VPPA. On the former point, Defendant's pre-motion letter explained, at length, that:

> Plaintiff has not alleged that FITE disclosed her PII because the Complaint contains no information about what personal information her Facebook profile contains that would allow an ordinary person to connect the data in the alleged transmissions to her. Plaintiff does not allege that FITE shared her name, address, social security

---

[2] Defendant also advances other arguments in its motion to dismiss. In light of the dismissal of Plaintiff's complaint on the grounds above, the Court declines to reach these additional arguments.

9

> number, or any other specific information about her; she alleges that FITE sent Facebook the titles and URLs of videos she watched, together with her numeric FID. The Complaint contains an "exemplar Facebook profile" for Mark Zuckerberg and nakedly states that anyone with Plaintiff's FID could pull up her public Facebook profile, but is silent about what, if any, personal information is on her profile. The lack of any allegation about what information can be gleaned from her public Facebook profile dooms her claim. See Wilson v. Triller, Inc., No. 21- cv-11228, 2022 WL 1138073, *6 (S.D.N.Y. April 18, 2022)[.]

(ECF No. 17.)

In response to this letter, Plaintiff did not offer to amend her complaint and instead asserted:

> FITE argues in error that Plaintiff "has not alleged that FITE disclosed her PII" because she has not alleged what specific information was available on her Facebook profile. Plaintiff's claim under the VPPA is not based upon the disclosure of any detailed information available on Plaintiff's (or class members') Facebook profile, but rather upon FITE's disclosure of the individual unique FIDs themselves, along with users' specific video viewing activity. Plaintiff has alleged that an FID is a unique, personal identifier that every Facebook user – including herself and every other class member – possesses. That is sufficient for a claim under the VPPA; Plaintiff was not required to reveal her specific FID number at the pleading stage. And whatever additional personal information may or may not be accessible from her or any other class members' Facebook profile is irrelevant. See Stark v. Patreon, Inc., No. 22-CV-03131-JCS, 2022 WL 7652166, at *8 (N.D. Cal. Oct. 13, 2022)[.]

(ECF No. 20.)

During the subsequent briefing of the motion to dismiss, Plaintiff elected to address leave to amend in a conclusory footnote. Moreover, since the motion to dismiss was briefed, the parties filed numerous letters discussing recent decisions involving VPPA claims, including the Walker decision cited above.

Plaintiff has had multiple opportunities to propose amendments that would address the content of her public Facebook profile page and any prerecorded video she accessed. Cf. Feldman, 2023 WL 2388381, at *8–10 (denying motion to dismiss where the complaint alleged that the plaintiff's "'Facebook profile and his email address contain his name,' making it feasible to

identify [him] by reference to this information"). However, even though such information should be readily accessible to her, she has simply elected not to do so. Given all the circumstances here, the Court denies leave to amend.

## III.  CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant's motion to dismiss and DENIES Plaintiff leave to amend. The Clerk of Court is directed to close this case.

**SO ORDERED.**

Dated: September 30, 2023
Central Islip, New York

/s/  (JMA)
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE

11